NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FIDELIA RUSSO | : | |
| Plaintiff, | : | Civ. No. 04-3759 (GEB) |
| v. | : | **MEMORANDUM OPINION** |
| JO ANNE B. BARNHART, Commissioner of Social Security, | : | |
| Defendant. | : | |

**BROWN, Chief Judge**

    This matter comes before the Court upon the appeal of plaintiff Fidelia Russo ("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not entitled to supplemental security income and disabled widow's benefits under the Social Security Act ("the Act"). The Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

**I. BACKGROUND**

    On or about March 2, 2001, Plaintiff filed an application for supplemental security income under Title XVI of the Act, alleging disability as of December 1, 1996. Record ("R.") at 154-56. Subsequently, on or about July 9, 2001, Plaintiff filed an application for disabled widow's benefits under Title II of the Act. R. at 51-53. Both applications were denied on or about October 18, 2001. R. at 158-160; 26-28. A request for reconsideration of the denial of these applications was denied on or about July 24, 2002. R. at 164-65; 33-34. On or about

September 20, 2002, Plaintiff filed a Request for Hearing by an Administrative Law Judge ("ALJ"). R. at 35. A hearing was originally scheduled for April 3, 2003, but was rescheduled so that Plaintiff could obtain legal representation. R. at 36, 183-84. On May 29, 2003, ALJ John M. Farley conducted a hearing to determine whether Plaintiff was disabled and thus entitled to benefits. See R. at 166-80.

During questioning by the ALJ, Plaintiff testified through an interpreter that she had last worked more than twenty years earlier in a lamp factory in Puerto Rico. R. at 172. Plaintiff does not speak English and completed the ninth grade while attending school in the Dominican Republic. R. at 175. Plaintiff indicated that she is able to read and write in Spanish. R. at 176. Plaintiff testified that she believed that she could not presently work due to pain in her back and legs. R. at 173. Additionally, Plaintiff testified to being unable to sit for longer than a half-hour before experiencing pain. Id. Plaintiff testified to taking Flexeril, a muscle relaxant, for her pain. R. at 174. Plaintiff also testified to taking Xanax for depression. R. 174-75. According to Plaintiff, both medications were prescribed by Dr. Eve Feret. R. at 174-75.

When questioned by her attorney, Plaintiff testified that she had been seeing Dr. Feret every month or month-and-a-half for about one year. R. at 179. Plaintiff also testified that she had pain in her right elbow and shoulder. R. at 177. According to Plaintiff, this pain, as well as her back pain, worsens with movement. Id. Plaintiff testified that the pain in her back and legs prevents her from standing for more than fifteen or twenty minutes before she must sit and rest. R. at 177. Plaintiff further testified that sitting for more than a half-hour causes her pain. R. at 178. Plaintiff testified that she is unable to walk for more than a block-and-a-half without experiencing pain. Id. Additionally, Plaintiff testified that lifting more than ten pounds for more than a short time gives her back pain. R. at 178. Plaintiff testified that bending at the waist

causes her back pain as well.  Id.  Plaintiff testified that she accompanies her son on his one block walk to and from school each day.  Id.  Further, Plaintiff testified that she cooks for herself and her son while at home.  Id.  Plaintiff also testified that her daughters usually assist her with house cleaning duties.  Id.  Plaintiff testified that she is able to shop for groceries, but because she does not drive, she relies on transportation provided either by her daughters or her brother. R. at 179.

The ALJ issued his decision on August 18, 2003, in which he determined that Plaintiff has not been disabled under the Act.  R. at 18-22.  The ALJ relied on the five-step analysis established in 20 C.F.R. §1520 and discussed in greater detail below.  At step one, the ALJ relied on the record, namely Plaintiff's initial application for disability benefits, see R. at 52, which states that her allegedly disabling condition began on December 1, 1996, and establishes that Plaintiff has not been engaged in substantial gainful activity since that time.  R. at. 20.

At steps two and three, in which the ALJ must consider the severity of Plaintiff's medical impairments, the ALJ relied on the medical evidence, namely that of Drs. Fion, Mahan, Sawicki, and Feret, see R. at 19, which establishes that Plaintiff has multijoint and back osteoarthritis and hypertension, but such evidence does not disclose medical findings which meet or exceed in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4 ("the Listing").  R. at 20.  The ALJ made a specific reference to medical listing 1.04A pertaining to spinal disorders, which requires Plaintiff to exhibit certain motor or reflex losses in order to reach a finding of disability.  Id.  The ALJ noted that neither of these types of functional losses are presented by the medical record.  Id.  The ALJ then addressed Plaintiff's testimony of disabling pain, see R. at 168-79, and compared such testimony to the available objective medical evidence and concluded that such objective indicia of Plaintiff's condition does not comport with

Plaintiff's complaints. R. at 20. The ALJ made reference to 20 C.F.R. §§ 404.1529 and 416.929, both of which state that an individual's subjective complaints of pain will be evaluated in relation to the objective evidence. The ALJ also referenced SSR No. 96-7p, which states in pertinent part that

> in determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including objective medical evidence, the individual's own statements about symptoms, states and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

1996 SSR LEXIS 4, 2-3. In finding Plaintiff's complaints of pain to be not credible in relation to the rest of the record, the ALJ specifically considered: 1) the nature, location, onset, duration, frequency, radiation and intensity of Plaintiff's pain; 2) precipitating and aggravating factors; 3) type, dosage, effectiveness, and adverse side effects of any pain medication; 4) treatment, other than medication, for the relief of Plaintiff's pain; 5) functional restrictions that Plaintiff's pain places on her lifestyle; and 6) Plaintiff's daily activities and work record. Id. The ALJ specifically noted that plaintiff has "sought out only limited modalities [i.e., muscle relaxants, see R. at 174] of treatment for the alleged pain . . . and does not consistently take prescription medication for the impairments." Id.

At the conclusion of steps two and three, the ALJ found that the medical evidence establishes that, while Plaintiff has been unable to perform the degree of lifting associated with work in the heavy and more strenuous categories, Plaintiff has consistently retained the residual functional capacity ("RFC") to perform work that involves lifting and carrying objects weighing up to fifty pounds; frequently lifting and carrying objects weighing up to twenty-five pounds; standing, walking, and sitting for up to six hours in an eight-hour day, pushing and pulling arm and leg controls and the full

4

range of medium work.  R. at 21.  The ALJ, in formulating his conclusion on Plaintiff's RFC, considered the entire record, including the July 18, 2003, RFC assessment performed by Dr. Feret, in which no postural limitations were found and Plaintiff's prognosis was pronounced to be "fair to good depending on adherence to regimen/regular followup."  See R. at 150-53.  Dr. Feret did not examine Plaintiff in direct connection with her RFC analysis.  R. at 150.  However, the ALJ cited 20 C.F.R. §404.1527(f), which permits a non-examining source, such as Dr. Feret, to be considered as opinion evidence.  R. at 21.

At step four of the sequential analysis, the ALJ considered the entire record including Plaintiff's testimony that she had not worked in some twenty years.  See R. at 172.  From this testimony, the ALJ concluded that Plaintiff has no past relevant work.  R. at 21.  The ALJ then acknowledged that, at the fifth and final step of the sequential analysis, the Social Security Administration bears the burden of establishing the presence of other jobs that Plaintiff might perform in the national economy.  R. at 21.  The ALJ consulted Rule 203.18 of 20 C.F.R. § 404(p) ("the Medical-Vocational Grid") and, while considering Plaintiff's "closely approaching advanced age," limited education, unskilled vocational history and RFC, determined that Plaintiff has had, since December 1, 1996, the RFC to perform jobs that exist in significant numbers in the national economy.  R. at 21.  Consequently, the ALJ found that Plaintiff has not been disabled as defined by the Act.  R. at 21.  As a result of his finding of no disability, the ALJ declined to evaluate Plaintiff's application for disabled widow's benefits, since such benefits require a showing of disability under the Act.  R. at 21.

On or about October 16, 2003, Plaintiff requested that the Appeals Council review the ALJ's decision. R. at 10. The Appeals Council denied the request on June 17, 2004. R. at 4-5. Plaintiff then filed the instant civil action with the Court, seeking review of the Social Security Administration's denial of disabled widow's benefits and supplemental security income benefits.

**II. DISCUSSION**

  A. <u>Standard Of Review For Social Security Appeals</u>

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405(g); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than "a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d. Cir 1999)(quoting <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001)(citing <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978)(internal

6

citations omitted).  As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review.  <u>Fargnoli</u>, 247 F.3d at 42.  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992)(citing <u>Early v. Heckler</u>, 743 F.2d 1002, 1007 (3d Cir. 1984)).

    B.  <u>Standard for Awarding Benefits</u>

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements.  A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability.  20 C.F.R. § 404.1520 (2005).  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is working and the work is a

substantial gainful activity, his application for disability benefits is automatically denied. Id. If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1530(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. Id. Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments contained in the Listing. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. Id.; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functioning capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work"). 20 C.F.R. §404.1520(a)(4)(iv). If the claimant is found capable of performing his previous work, the claimant is not disabled. Id. If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step. The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must consider the claimant's RFC assessment, together with claimant's age, education and past work experience. 20 C.F.R. § 404.1520(g). Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing her past work or some other work in the national economy because of her impairments.

The application of these standards involves shifting burdens of proof. The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the claimant is unable to meet this burden, the process ends and the claimant does not receive benefits. Id. If the claimant carries these burdens and demonstrated that the impairments meet or exceed those within the Listing, claimant has satisfied her burden of proof and is automatically entitled to benefits. Id. If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work." Id. Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Id. The five-step analysis "can be quite fact specific." Burnett v. Commissioner, 220 F.3d 112, 126 (3d Cir. 2000).

Additionally, to qualify for disabled widow's benefits, a plaintiff must establish that: 1) she is the widow of a wage earner who died fully insured; 2) she is at least 50, but less than 60 years of age; and 3) she is under a disability as defined by 42 U.S.C. § 423(d). 42 U.S.C. §402(e)(1). Plaintiff's disability must have commenced within seven years of the latest of the following events: the month in which the wage earner died, the last month in which the claimant was entitled to mothers' insurance benefits or the last month in which there was a previous entitlement to widows' benefits. 42 U.S.C. § 402(e)(4); 20 C.F.R. §404.336(c)(2).

C. <u>The ALJ's Decision Was Based Upon Substantial Evidence In the Record</u>

Plaintiff argues that the ALJ's finding of no disability was not based on substantial evidence and should be reversed.  Plaintiff first contends that "the ALJ's RFC assessment is offered without articulated basis and contradicts the medical evidence of record."  Pl.'s Br. at 9.  The Court finds that a review of the ALJ's decision and the record reveals that the ALJ's decision substantially comports with the available medical evidence.

Plaintiff, citing Dr. Leffler's February 25, 1998, CT Scan of Plaintiff's lumbar spine, argues that she has spinal stenosis.  Pl.'s Br. at 13.  Plaintiff next argues that she has uncontrolled hypertension.  <u>Id.</u>  However, the ALJ did not address these conditions because they are not supported by the record.  A review of the record reveals that Dr. Leffler made no such conclusion, much less any mention of spinal stenosis.  R. at 116.  To the contrary, Dr. Noble conducted a MRI examination of Plaintiff's lumbosacral spine on March 27, 1998, that revealed "no frank disc herniation or spinal stenosis."  R. at 117.  Furthermore, on July 9, 2001, Dr. Fion concluded that Plaintiff's hypertension was "under control."  R. at 121.

Plaintiff further noted that she suffers from a variety of impairments including chronic lumbar pain, osteoarthritis, polyarthralgia involving hands, elbows, and shoulder joints, as well as "limitation of motion" in her shoulders, elbows, knees, hips, legs, and back.  Pl.'s Br. at 13.  Plaintiff then contends that the ALJ failed to "explain why these clinical findings do not contraindicate the full range of medium work."  <u>Id.</u>

However, the ALJ did explain why Plaintiff's pain and limited ranges of motion did not mandate a finding of anything less than the full range of medium work.  The ALJ

noted Plaintiff's "severe" impairments of "multijoint and back osteoarthritis and hypertension." R. at 20.  The ALJ then found that such impairments do not rise to the criteria of any impairment contained in the Listing.  Id.  The ALJ specifically considered part 1.04A of the Listing, which pertains to spinal disorders, and found that none of Plaintiff's impairments were included therein.  Id.  The ALJ went on to note the record's lack of a showing of motor or reflex loss, which the Listing requires in order to find disability when impairments such as osteoarthritis, degenerative disc disease, and arthritis are present.  Id.  See also Listing at 1.04A.  Therefore, the ALJ clearly considered that Plaintiff does suffer from certain impairments, but determined that such impairments were not among those contained within the Listing.  Consequently, the ALJ's RFC assessment is supported by substantial evidence in the record.

     Plaintiff next argues that the ALJ improperly used rule 203.18 of the Medical-Vocational Grid at the fifth step of the sequential analysis to reach a finding of no disability.  Plaintiff cited Sykes v. Apfel, 228 F.3d 259, 261 (3d Cir. 2000), pointing out that the Commissioner may not disregard a non-exertional impairment as insignificant under the vocational rules "without taking evidence [such as testimony from a vocational specialist] establishing the fact."  Pl.'s Br. at 16.  However, Sykes implicitly requires that a "non-extertional impairment" be found to affect a claimant before the above cited holding may apply.  Sykes, 228 F.3d at 261.  In the instant matter, the ALJ did not find that Plaintiff suffers from any significant non-exertional limitations.  R. at 22.

     Although Plaintiff contested the ALJ's finding of no significant non-exertional limitations, the Court finds that the ALJ's conclusion is supported by substantial evidence.  Dr. Feret, Plaintiff's own physician, in her assessment of Plaintiff's RFC,

made no findings of any postural limitations. R. at 151. In assessing Plaintiff's environmental restrictions, Dr. Feret found that Plaintiff suffers from allergies to dust and cigarette smoke and concluded that Plaintiff should avoid extreme temperatures. Id. As noted previously, Dr. Feret's RFC assessment, upon which no direct examination was based, is nevertheless considered to be opinion evidence, pursuant to 20 C.F.R. § 404.1527(f).

Dr. Miranda, a state agency physician, completed an RFC assessment of Plaintiff on July 22, 2002. See R. at 129-33. The ALJ referred to Dr. Miranda's RFC assessment only generally, failing to make specific reference to it in his decision. However, Dr. Miranda did render a conclusion on Plaintiff's environmental limitations within the record, noting only that Plaintiff should avoid hazards such as machinery or heights. R. at 133. The ALJ noted generally that the opinion of state agency physicians is considered as opinion evidence pursuant to 20 C.F.R. § 404.1527(f)(2)(i). Therefore, Dr. Feret's conclusion of no postural limitations supports the ALJ's decision, as does Dr. Miranda's finding of no significant environmental limitations. Furthermore, the ALJ made clear reference to the weight of this evidence, pursuant to 20 C.F.R. § 404.1527(f), designating each as "opinion evidence." Therefore, Plaintiff's argument under Sykes is inapposite to this case and the ALJ's reference to the Medical-Vocational Grid does not present grounds for reversal.

For the reasons set forth above, the Court finds that the ALJ rendered a decision based upon substantial evidence in the record in determining that Plaintiff was not disabled. Accordingly, Plaintiff's appeal is denied.

**III. CONCLUSION**

      For the reasons stated herein, Plaintiff's appeal is denied.  An appropriate form of order accompanies this Memorandum Opinion.


Dated: August 3, 2006


                                                s/ Garrett E. Brown, Jr.
                                        GARRETT E. BROWN, JR., U.S.D.J.